JEFFERSON KELSO *v.* VANCE and EDDINS, Adm'rs, and HENRY H. SUGG *v.* VANCE and EDDINS, Administrators.

1. ADMINISTRATION. *Public sale by, of personal property. Can not be avoided. When.* Where an administrator, by authority of the sole distributee, in whom the legal title exists, sells personal property at public sale, no one can be heard to complain except a creditor or an administrator, *de bonis non,* seeking the property as assets to pay debts, especially when the purchaser has held the property long enough to perfect his title under the Statute, and has not the power to return the same.

Case cited: McLean *v.* Houston, 2 Heis., 38.

2. SAME. *Confederate money. Abatement of same. When.* Where notes are given with the understanding that Confederate money will be received in payment of the same, the debtor will be entitled to abate the amount of the sum to be paid, to the value of Confederate money as compared with United States currency at the time the notes fell due.

Case cited: Thornington *v.* Smith.

---

FROM LINCOLN.

---

Appeal from the Chancery Court. D. M. KEY, Chancellor.

W. B. MARTIN and W. F. KERCHEVAL for Kelso *et al.*

P. TURNEY, E. COOPER and EDWARD H. EAST for Vance and Eddins, *et al.*

FREEMAN, J., delivered the opinion of the Court.

The original bills in this case are filed by a number of persons, who purchased slaves at a sale

made by Jacob Vance and Hugh Eddins, who were administrators of S. G. Eddins, deceased. Said S. G. Eddins died in, perhaps, the latter part of 1861. The object of the bills is to enjoin suits brought by Vance and Eddins on the notes given for th negroes, on the ground that the negroes were sold by the administrators without an order of any court, and that this was a fraud on the purchasers, and they obtained no title. S. G. Eddins died unmarried, leaving no issue, and his father, Abraham Eddins, was his sole distributee.

The facts in reference to the sale are, that S. G. Eddins left a considerable estate, both real and personal, at his death, in Lincoln County. His father being the sole distributee, as the proof shows, executed an instrument of writing in January, 1862, or thereabouts, in which he authorized the said Vance and Eddins, the administrators, to sell the slaves of the estate except two, and after paying debts with proceeds, he gave the surplus to his children, the brothers and sisters of the deceased. In pursuance of this authority, the administrators proceeded to sell the slaves at public sale, when the complainants became the purchasers, gave their notes, and took possession of the negroes, retaining them until they were emancipated.

Can they now rescind the contract, and enjoin the collection of the notes given for the purchase-money? We think not, because the sale was made by the parties by virtue of the power given to

them by the only distributee, Abraham Eddins, in whom was the legal title, subject only to be divested on regular sale under decree of a Court of competent jurisdiction, at suit of the administrator for payment of debts. They were personal property, and while the sale, without the order of Court by administrators, would be void as to the distributee, if he gives his assent to it, no one can complain, except, perhaps, it might be creditors whose debts were unpaid, or an administrator, *de bonis non,* seeking the negroes as assets to pay debts. No creditors or such administrator being before the Court, and the owner of the legal title, the distributee, assenting to the sale and delivery of the property, the parties rightfully got possession of the slaves and held them for three years and more adversely as their own property, and now come into a Court of equity, and ask to be relieved of the purchase-money, after the negroes have been emancipated, and it is impossible to restore the property. We do not think this can be done.

It is insisted, however, that the sale was a fraud on them by the administrators. We see no evidence of this whatever in the case. The administrators sold the negroes by virtue of the authority given them by the owner of the legal title, and did not pretend to have an order of Court to do so. Nor is there any proof to show the purchasers believed, or were led to believe, such was the case.

The case of *McLean* v. *Houston,* 2 Heis., 38, is

cited to support the position that merely selling as administrators was a fraud. That case does not sustain the argument. In that case a party purporting to act as executor, and representing himself as such, fraudulently, as the plea alleged, when in fact he had not proven the will, and was not executor at all. No such false representation is found in this case. There being no fraud in the case, the simple question is, whether a party who purchases a slave and holds it long enough to perfect his title under the Statute of Limitations, can refuse to pay the purchase-money, and rescind the contract, when he is totally unable to return the property. As we have said, we think he can not.

Another question is presented by a bill filed on the part of Abraham Eddins and the brothers and sisters of deceased, in which they seek to enforce the notes given to the administrators, on the ground that the administrators are estopped by their sale from suing for the negroes; that the possession of the purchasers was a conversion of the property, and that Abraham' Eddins has the right to take the property, or its proceeds, and asking to enforce the collection of the notes, in order to realize a fund to pay the debts of the intestate, and have surplus distributed.

This bill can not be sustained. The notes were taken to the administrators under the authority given them by Abraham Eddins, and sale made in pursuance of it. There is no reason why he should intervene. In fact, it is an effort on their part to claim that

22—vol. 2.

the sales were void, and yet collect the purchase-money; while, if the sale had been made without the authority of Abraham Eddins, he might recover the slaves as his property, he can not disaffirm the sale and recover the contract price. He might have, after demand made, recovered the value of the slaves, as on a conversion. But this is not attempted. Without discussing this bill, we hold it must be dismissed, at costs of parties.

It appears, however, that the negroes were sold with the announcement that they could be paid for in Confederate money, and the notes given were, therefore, Confederate contracts, under the rule in *Thornington* v. *Smith,* which we have repeatedly recognized.

The result is, that the purchasers are not entitled to the relief they seek, of an injunction against the notes, but are entitled to abate the amount of the sum agreed to be paid, to the value of Confederate money, as compared with United States currency at the time the notes fell due.

The bill of Abraham Eddins *et al.* will be dismissed, at cost of complainants, in this and Court below. An account will be ordered between the purchasers at the sale and administrators, to ascertain the value of the amount of the notes in United States currency, for which purpose the case will be remanded, and the administrators will be entitled to a decree for the sum ascertained on coming in of report. The costs of the purchasers' bills will be

J. Kelso *et al. v.* Vance and Eddins, Adm'rs.

divided between the administrators and the purchasers in this and Court below, in each case.

We have examined the petition for re-hearing in this case, and the Court unanimously affirm the views heretofore given. On re-examination, the only difficulty we have is, as to whether we were correct in abating the amount of the notes to the value of Confederate money, but as no judgments seem to have been rendered in the cases before injunction, this is proper. If judgments had been rendered, we could not order the reference to ascertain the value of Confederate money.                    FREEMAN, J.